IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AGNES GLENN, *in her capacity as the personal representative of the Estate of Roderick Darius Rayshon Bolton, deceased*, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. 1:17-00194-JB-N ) ) |
| WALTER MYERS, *et al.*, | ) ) |
| Defendants. | ) |

**ORDER**

This matter is before the Court on Defendant M.H.M.'s Renewed Motion for Summary Judgment ("Motion") (Doc. 111), Plaintiff's Response (Doc. 129), M.H.M.'s Reply (Doc. 132), Plaintiff's "Brief on the Element of Duty" (Doc. 140), and M.H.M.'s Reply thereto (Doc. 141). The Motion is ripe for resolution. After careful consideration, the Court concludes that the Motion is due to be **granted.**

**I.    Background**

Plaintiff Agnes Glenn is the Personal Representative of Roderick Bolton, her deceased son. Defendant M.H.M. Correctional Services, Inc. is a privately held, wholly-owned subsidiary of M.H.M. Services, Inc. (Doc. 34). M.H.M. provided certain mental health services to inmates at Holman Correctional Facility ("Holman"), according to the terms of a contract ("Contract") between M.H.M. and the Alabama Department of Corrections ("ADOC").

Plaintiff commenced this action after her son committed suicide while incarcerated at Holman. As more fully set out in this Court's order dated June 7, 2018, (Doc. 103), Roderick

Bolton ("Bolton") was a practicing Muslim involved in several incidents at Holman that resulted in him being placed in segregation for insubordination or failure to follow direct orders. The incident that immediately preceded Bolton's suicide involved his disobedience of an order to shave his beard. Bolton maintained his religious beliefs required him to keep a beard. (Doc. 103 at 2, 3). Bolton was placed in a segregation unit at approximately 9:00 a.m. on September 11, 2015. Plaintiff alleges that following his placement in segregation, Bolton informed various ADOC correctional officers and Shelia Brown ("Brown"), a psychological associate employed by ADOC, that he was having suicidal thoughts.[1] Bolton was, nevertheless, maintained in the segregation unit and was not placed on suicide watch. He was last seen alive in his segregation cell around 6:00 p.m. on September 11, 2015. On September 12, 2015, Bolton was found hanging in his cell at 3:40 a.m. and pronounced dead at approximately 4:25 a.m.

M.H.M. contracted with ADOC to provide comprehensive mental healthcare treatment to inmates at several ADOC facilities in 2013. (Doc. 112-3). The Contract incorporated ADOC Administrative Regulations. These Regulations required ADOC to classify inmates. The Contract did not reassign that responsibility to M.H.M. In the Contract, M.H.M. and ADOC differentiated between different categories of inmates that required mental health services under ADOC regulations. (*See* ADOC Reg. No. § 613). These regulations classify inmates' mental health care needs on a sliding scale from "MH-0" to "MH-6." The lowest level of classification is "MH-0." That classification applies to inmates that have "no identified need for mental health assistance."

---

[1] Plaintiff initially alleged that Brown was employed by M.H.M and thus sought to hold M.H.M liable for Brown's conduct. Plaintiff now concedes that Brown was not employed by M.H.M at any material time, and therefore has abandoned her vicarious liability claims against M.H.M. (Doc. 129 at 6).

2

(*Id.*).  The Contract provided that inmates classified from "MH-1 to MH-6" were on M.H.M.'s "mental health caseload," and M.H.M. had to provide them with certain mental health services. However, inmates classified as "MH-0" were not on M.H.M.'s "mental health caseload" and M.H.M. did not have to provide those inmates with services.  (Doc. 111 at 6).  Bolton was classified as "MH-0."  The ADOC Administrative Regulations required ADOC to triage "MH-0" inmates who experienced a mental health crisis.  An "MH-0" classified inmate could be placed on M.H.M.'s caseload only if ADOC referred the inmate to M.H.M. under the regulations.

The Fourth Amended Complaint ("FAC") is the operative complaint.  (Doc. 75).  The FAC initially included federal and state law claims, but the federal claims have been dismissed. (*See* Doc. 143).  Plaintiff's two remaining claims against M.H.M. are state law claims, which Plaintiff describes as an "Alabama Claim for Negligent Medical Malpractice" (*Id.* at Count 3) and an "Alabama Law Claim for Wantonness" (*Id.* at Count 5).  The FAC asserts that the "Alabama Claim for Negligent Medical Malpractice" is made "pursuant to the Alabama common law tort of negligence as modified by the Alabama Medical Liability Acts, Ala. Code §§ 6-5-480, et seq." (Doc. 75, paragraphs 99 and 99.1).  Plaintiff's allegations of duty in the FAC state that "MHM, its supervisors, and its employees . . . had a duty to follow the standard of reasonable care, skill, and diligence in their care and treatment of [Bolton] that is used by similarly situated health care providers in the same general line of practice."  (*Id.* at paragraph 100.1).  The FAC also alleges that M.H.M. "undertook a duty . . . to act with reasonable care in hiring, training, supervising,

3

and retaining medical professionals, whether as employees or contractors, who are reasonably competent to provide health care to inmates." (*Id*. at paragraph 101.2).[2]

Plaintiff does not allege in the FAC that M.H.M. owed any duty based on the Contract. The FAC contains no allegations whatsoever regarding the Contract. The word "contract" is found nowhere in the FAC. Plaintiff attempted to introduce allegations regarding the Contract, for the first time, in a proposed Fifth Amended Complaint but Plaintiff's motion for leave to file was denied. (*see* Docs. 118 and 143).

M.H.M. argues it is entitled to summary judgment because Plaintiff cannot demonstrate a genuine issue of fact on the element of duty. It is undisputed, according to M.H.M., that no M.H.M. employee saw Bolton and that he was not on M.H.M.'s caseload. M.H.M argues, therefore, that it did not have a patient-provider relationship with Bolton, which is necessary to establish a duty for Plaintiff's claims.

In Plaintiff's initial reply brief, she argues that the Contract "supplies the duty." (Doc. 129 at 31). The Contract created a duty, according to Plaintiff, by its requirement that M.H.M "provide comprehensive mental health treatment to state inmates in accordance with all applicable laws." (Doc. 129 at 13). Plaintiff contends that the contractual requirement of "comprehensive mental health treatment" includes a suicide prevention program, and that M.H.M failed to provide such a program. (*Id*. at 14). In its Reply Brief, M.H.M responds that Plaintiff's argument constitutes a new contract theory "found nowhere in her operative

---

[2] Plaintiff's "Alabama Law Claim for Wantonness" is similarly framed as being based in tort. *See* Doc. 75, paragraph 114 (stating the claim for wantonness "is asserted . . .pursuant to the Alabama common law tort of wantonness.). According to Plaintiff, M.H.M. "is vicariously liable for the wanton conduct of its supervisors, and its employees . . . . under the doctrines of *respondeat superior*, apparent agency, nondelegable duties, and other doctrines." (*Id*. at paragraph 118.1).

4

complaint," and that the Court should not consider it. (Doc. 132). M.H.M further argues this new theory is actually "contrary to the express language" of the Contract. (*Id.*).

Following M.H.M.'s Reply Brief, Plaintiff filed a "Brief on the Element of Duty" in which she argues that M.H.M.'s duty "arises via statute by virtue of legislative mandate – irrespective of any contract or contract interpretation." (Doc. 140 at 2). Plaintiff then argues how the statute alters the substance of the common law duty, rather than demonstrate how the statue (or the common law) imposes a duty on M.H.M., given the undisputed facts. For example, Plaintiff cites Section 6-5-484(a) of the Alabama Medical Liability Acts, which states that a healthcare provider's "duty to the patient shall be to exercise such reasonable care" as other similarly situated providers. (*Id.* at 4). She also notes that Ala. Code § 6-5-548 mandates that the plaintiff produce a "similarly situated health care provider" expert to establish what the standard of care is. Plaintiff argues that expert testimony is vital to define the standard of care and determine whether it has been breached. (*Id.* at 2 – 5).

Plaintiff's arguments here largely presuppose the *existence* of a duty. "Liability for a breach of the standard of care depends, first, on the existence of a duty to the patient, which, in turn, depends on the existence of a physician-patient relationship creating the duty." *Wilson v. Teng*, 786 So. 2d 485**,** 498 -99 (Ala. 2000). As for a patient-provider relationship, Plaintiff argues this too is controlled by experts. (*Id*. at 3, *citing Wilson, supra.*).[3]

M.H.M. filed a Reply to Plaintiff's "Brief on the Element of Duty," pointing to Plaintiff's oscillating positions on the duty she alleges that M.H.M. bore to Bolton. (Doc. 141). M.H.M.

---

[3] As explained more fully below, on the issue of the existence of patient-provider relationship, the facts in *Teng* are so thoroughly distinguishable from the instant case as to be of no support whatever to Plaintiff's argument.

5

then underscores its argument that summary judgment is due to be granted, given the undisputed facts that no M.H.M. employee ever saw Bolton, that Bolton was not on its caseload, and that the Contract placed the duty to triage mental health issues solely on ADOC.

## II. Legal Standard

Summary judgment should be granted only if "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden . . ., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).

In deciding a motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant . . ." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). However, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as

required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion . . ." Fed. R. Civ. P. 56(e)(2).

III. Discussion

**A. M.H.M. did not employ Brown; therefore, M.H.M.'s request for summary judgment is due to be granted.**

Plaintiff's claims for negligent medical malpractice and wantonness hinge partly on the theory that M.H.M. can be held liable for Bolton's death by virtue of Brown's actions. This reliance is flawed. To establish a cause of action via direct or various liability, a party must demonstrate that a master-servant relationship existed between the person responsible for the wrongful conduct and the party sought to be held liable. *See, e.g., Ware v. Timmons*, 954 So. 2d

545, 552 (Ala. 2006), *as modified on denial of reh'g* (Sept. 22, 2006).[4] The undisputed facts establish that ADOC exclusively employed Brown during the time. (*see e.g.,* Doc. 112-13).[5]

Despite this, Plaintiff argues that because M.H.M. contracted with ADOC to provide mental health care treatment for the inmates housed in ADOC's facilities, M.H.M. *should have* provided a suicide prevention plan for each facility and training regarding such a plan, so Brown could have noticed Bolton's suicidal ideations. The deficiencies in this argument are discussed below. However, at this juncture, it is sufficient to say that M.H.M. cannot be held directly or vicariously liable for Brown's actions because she was not M.H.M.'s agent. To the extent that Plaintiff's claims are predicated on Brown's actions, M.H.M. is due summary judgment.

---

[4] The Court also notes that in an attempt to hold M.H.M. liable for Bolton's death, Plaintiff relies (in no small part) on Judge Thompson's decision in *Braggs v. Dunn,* 257 F.Supp.3d 1171 (M.D. Ala. 2017). However, one of Plaintiff's citations to that case damages her position, insofar as her argument relies on M.H.M.'s ability to make staffing decisions and Plaintiff's ability to hold M.H.M. liable for Brown's actions. (*see* Doc. 129 at 9). In *Braggs*, Judge Thompson found that ADOC was *responsible* for hiring and placement of ADOC staff. *Braggs,* 257 F.Supp.3d 1171, n. 15 (". . . some of the practices affecting mentally ill prisoners are determined by ADOC . . . for example, ADOC is responsible for staffing decisions . . ."). This citation adds to the stack of available evidence that Brown was not M.H.M.'s agent, and therefore, M.H.M. cannot be held liable for Brown's conduct. *See Ware,* 954 So. 2d 545, 552. ("[t]he general rule is that to constitute the relationship between master and servant for the purpose of fixing liability on the former for the acts of the latter under the doctrine of *respondeat superior*, it is indispensable that the right to select the person claimed to be a servant should exist."). Considering ADOC was Brown's "master" and she its "servant" – to use the language of agency – it is nearly inconceivable that Brown was M.H.H.'s servant, and therefore, capable of imposing liability upon M.H.M.

The Court also notes that the *Braggs* decision dealt with an entirely separate set of circumstances than those in the instant case. *Braggs* focused on whether ADOC inmates with "serious mental health needs" had shown that ADOC provided inadequate mental-health care in violation of those plaintiffs' Eight Amendment rights. *Braggs v. Dunn,* 257 F. Supp. 3d 1171, 1181 (M.D. Ala. 2017). Here, Plaintiff is pursuing what amounts to a wrongful death action, relying on allegations that M.H.M. was negligent, not that ADOC's care is generally inadequate (though Plaintiff's briefing might suggest the opposite to the lay-reader. (*see* Doc. 129 at 18 – 26)). Plaintiff's Eighth Amendment claim was dismissed in June of 2018. (Doc. 103 at 16, 17). Further, as discussed above, Bolton was an "MH-0" inmate. He was never classified as an inmate with "serious mental health needs."

[5] The Court notes that, while Brown was employed by ADOC at the time of Bolton's death, she had previously worked for M.H.M. However, Brown's prior work history is immaterial as to whether M.H.M. can now be held liable for her actions.

### B. Plaintiff's argument that M.H.M. owed Bolton a general duty of care under its contract with ADOC is inaccurate.

The Court finds that Plaintiff has made arguments in opposition to summary judgment not contained in her operative FAC. For instance, the claims in Plaintiff's FAC indicate that they are brought under Alabama's common law tort scheme as modified by the Alabama Medical Liability Act – there is no mention of the Contract between M.H.M. and ADOC imposing a duty upon M.H.M. However, Plaintiff relies heavily on the Contract in her opposition. Then, she retreats to the opposite position. Plaintiff first states that the Contract "supplies the duty." (Doc. 129 at 31). After M.H.M. points out this is a new claim not found in the operative FAC, Plaintiff makes an abrupt about-face to argue that duty arises "irrespective of any contract or contract interpretation." (Doc. 140 at 2).

Arguments and claims are not properly presented for the first time in opposition to a motion for summary judgment. Such new claims attempt to amend the complaint. New claims in briefs opposing summary judgment rarely are considered. For that reason alone, Plaintiff fails to fairly answer M.H.M.'s motion. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015); *see also, Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) (". . . Gilmour may not raise a contractual claim in her opposition to Gates' summary judgment motion. Gates had no notice of a contract claim based on the tort claims set forth in the complaint."); *Joseph M. Still Burn Ctrs., Inc. v. Liberty Mut. Ins. Co.,* 2010 U.S. Dist. LEXIS 1095, *33 (S.D. Ga. 2010) (finding plaintiff's newly-raised third party beneficiary claim procedurally improper because it was raised, for the first time, at summary judgment); *Fuller v. Winn-Dixie Montgomery, LLC*, 2017 U.S. Dist. LEXIS 112777, at *13, 15 (S.D. Ala 2017) (refusing to consider the merits plaintiff's third party beneficiary claim raised for the first time at summary judgment).

Therefore, to the extent Plaintiff claims a duty exists by virtue of the Contract, it is a new claim that does not warrant consideration.

Even if Plaintiff could pursue this new argument and claim – that M.H.M. owed Bolton a duty by virtue of M.H.M.'s Contract with ADOC (Doc. 129 at 14, 26) – it would fail. Plaintiff argues that M.H.M. owed Bolton a duty of care because: (1) M.H.M. contracted with ADOC to provide a comprehensive mental health care plan, and (2) Bolton was a third-party beneficiary of that Contract. Because Bolton was the third-party beneficiary of the Contract, Plaintiff argues M.H.M. must now be held liable for his death. The plain terms of the Contract contradict this proposition.

Plaintiff's theory of liability – that M.H.M. breached its duty to Bolton because it failed to satisfy its contractual obligations by forming and implementing a suicide prevention plan – fails because the Contract between the parties required ADOC to provide such a plan.[6] In fact, the terms **prevented** M.H.M. from devising and implementing such a plan. The contract between the parties provides:

> The ADOC hereby contracts with MHM to provide for the delivery of reasonably necessary mental health care, as set forth herein, to individuals under the physical custody and control of the ADOC,

---

[6] The Court formulates the issue this way due to Plaintiff's phrasing in her opposition and the manner in which her argument is structured in that document. For instance, on p. 14 of her brief, Plaintiff states the following:

> Although the contract explicitly required MHM to provide ADOC with a "comprehensive mental health treatment to state inmates in accordance with all applicable laws," MHM never did so. MHM's corporate representative . . . admitted that a suicide prevention plan is certainly part of any comprehensive mental health treatment in a prison. She further admitted that "[a] minimally adequate healthcare system must have a functioning suicide prevention program." [. . .] However, MHM provided no suicide prevention plan prior to Roderick's suicide.

(Doc. 1298 at 14).

Following the above, Plaintiff provided the Court with several pages of argument that included expert testimony that described a healthcare provider's duty in such circumstances and how failing to provide a suicide prevention plan would violate that duty.

and housed within its Facilities, **unless otherwise excluded herein**, and MHM enters into this Agreement according to the terms and provisions hereof.
[ . . . ]

The objective of the Mental Health Services agreements is for MHM to . . . **comply with all applicable ADOC Administrative Regulations** and Standard Operating Procedures related to mental health services . . .

All contracted staff shall comply with applicable state, federal, and local laws, regulations, court orders, administrative regulations, administrative directives, and policies and procedures of the ADOC and MHM, including amendments thereto.

(Doc. 112-3 at 4, 6, 11) (emphasis added). M.H.M. provided reasonably necessary mental healthcare for inmates housed in ADOC facilities under the Contract. (*see e.g.,* Doc. 111-3 at 4).[7] However, the ADOC has various regulations by which M.H.M. had to abide under the Contract.

According to Administrative Regulation § 629 (Doc. 112-10), it was ADOC's – not M.H.M.'s responsibility – to formulate a suicide prevention plan. Thus, the Contract **excluded** M.H.M. from doing so. M.H.M. complied with the Contract (and incorporated Regulations) and did not formulate a suicide prevention plan; to do so would have gone against the plain terms. To the extent that Plaintiff's claims rely on the Contract to impose a duty upon the latter based on its failure to provide a suicide prevention plan, M.H.M. would have been due summary judgment, even if the procedural hurdle described above was not in place.

---

[7] At the risk of appearing as though it is glossing-over Plaintiff's point, the Court acknowledges that, by contract, M.H.M. had a duty (pursuant to a contract with ADOC which incorporated ADOC regulations) to provide reasonably necessary mental health care treatment to all inmates **even if** an inmate was not on M.H.M.'s "caseload." However, that duty existed *unless* the contract provided otherwise, as discussed herein.

### C. Plaintiff's Common Law / AMLA Theory fails because M.H.M. had no physician-patient relationship with Bolton.

Plaintiff presents another argument, however, which appears to be two arguments, but is in fact, only one indecisive argument. On the one hand, Plaintiff asserts that her claims are brought under the Alabama common law tort of negligence as modified by the Alabama Medical Liability Act. (*see e.g.,* Doc. 75 at 19). On the other hand, her "Brief on the Element of Duty" suggests these claims are brought explicitly under the Alabama Medical Liability Act. (*see e.g.,* Doc. 140 at 1, 2) ("The duty imposed by plaintiff's medical malpractice claim arises via statute by virtue of legislative mandate – irrespective of any contract or contract interpretation . . . in an AMLA case, experts control. [. . .] When the Legislature has changed a common law rule, however, the statutory rule trumps the common law. That is exactly what has occurred with the elements of duty and breach in Alabama medical malpractice actions."). Under this argument, Plaintiff asserts that the duty of medical professionals, as modified by the Alabama Medical Liability Act, provides the predicate for holding M.H.M. liable for Bolton's death, and Plaintiff argues that the testimony of its expert witnesses as to the substance of the duty owed show M.H.M. violated that duty to Bolton as a healthcare provider. (*see* Doc. 129 at 26, and *generally* Doc. 140). Plaintiff's experts do not, however, establish the initial issue of the existence of a duty. They do not establish a patient-provider relationship between M.H.M. and Bolton. What the substance of that duty would have been if the duty existed is not material in this case where the undisputed evidence establishes as a matter of law that the duty did not exist. Likewise, the manner in which Plaintiff pursues her claims is of little consequence – M.H.M. is due summary judgment under either a tort or contract theory.

M.H.M. is due summary judgment on Plaintiff's remaining claims because no patient-provider relationship existed between Bolton and M.H.M. As noted in M.H.M.'s briefing, claims for negligent medical malpractice and wantonness in cases such as the one now before the Court require a patient-physician relationship. *Wilson v. Teng*, 786 So. 2d, 485, 498–99 (Ala. 2000); *Ex parte Tombigbee Healthcare Auth.*, 260 So. 3d 1, 5 (Ala. 2017), *reh'g overruled* (Mar. 2, 2018) (A "wanton[ness]" claim "involv[ing] a breach of an applicable standard of care for health-care providers is . . . governed by the AMLA."); *see also Ex parte Addiction & Mental Health Servs.*, Inc., 948 So. 2d 533, 535 (Ala. 2006); "[W]ithout this relationship, there is no breach of standard of care that can support liability under the statute." *Bozeman v. Orum*, 199 F. Supp. 2d 1216, 1235 (M.D. Ala. 2002).

Plaintiff argues that whether such a relationship exists is a question of fact that depends upon the particular circumstances in each case, relying on *Wilson v. Teng*, 786 So.2d 485, 499 (Ala. 2000). There, the Supreme Court of Alabama reversed and remanded a grant of summary judgment for a pediatrician who contended that, on the day of her patient's death, there was no patient-provider relationship because she only visited the child in the emergency room, the child was under the care and supervision of another physician, and she did not provide the child any treatment. The Court disagreed with the appellee physician. Instead, the Court found that significant deposition and expert testimony revealed that the appellee was the primary care physician for the deceased child (thus, establishing a prior relationship), and her interactions with the child on the day of her death (the appellant mother called the appellee pediatrician the day the child experienced symptoms that ultimately resulted in her death, and the pediatrician visited the child in the hospital and undertook at least some care for the child) created a genuine issue

13

of material fact as to whether a patient-provider relationship existed on that day. *Wilson,* 786 So.2d *at* 499.

While Plaintiff undoubtedly cited *Wilson* to show the weight that a court should afford to expert testimony as to whether a breach of a duty has occurred under the AMLA (as they say in their Brief, *see generally* Doc. 140), Plaintiff has not persuaded the Court there is a genuine issue of fact that a patient-physician relationship existed between Bolton and M.HM.

The Court recognizes that M.H.M. owed inmates a duty unless otherwise excluded by Contract (as noted above), but the Court finds Plaintiff's extensive briefing and reliance on *Wilson* and *Braggs* unconvincing. Specifically, in direct contrast to *Wilson,* the fact remains that no M.H.M. employee or agent saw or personally knew of Bolton's condition prior to or on September 11, 2015. In *Wilson*, the appellee had a pre-existing relationship with the child and saw her personally in the hospital the day she passed away. Further, though not entirely germane to this precise issue, nothing in the Contract says that M.H.M. treated suicidal patients until referral; instead, the M.H.M. employees were to abide by the administrative regulations. (*see* Doc. 112-10 at 2 – 4); (*see also,* ADOC Administrative Regulation 623(V)(A)(2) "ADOC Psychologists and Psychological Associates provide the following outpatient inmate mental health services: Crisis intervention / individual counseling for inmates not previously identified as mentally ill with documentation in the SOAP format on ADOC Form MH-040, *Progress Notes*, in the inmate's medical file."; *Id.* at (V)(A)(7), "ADOC Psychologists and Psychological Associates provide the following outpatient inmate mental health services: Consultation to inmates presenting mental health issues, who receive major disciplinary action, will be provided by ADOC psychology staff and/or contracted mental health staff. Documentation will be recorded on ADOC Form MH-041,

*Mental Health Consultation to the Disciplinary Process.*"). M.H.M.'s employees would have violated the regulation if they had triaged Bolton when he arrived at the medical facility.[8] To the extent that Plaintiff relies on *Wilson* to demonstrate that M.H.M. and Bolton had a physician-patient relationship via M.H.M.'s contract with ADOC, that argument is procedurally barred, as noted above. *See also Wilson,* 786 So.2d, at 499 (". . . when the professional services of a physician are accepted by another person for the purposes of medical or surgical treatment, the relation of physician and patient is created. [. . .] The relationship between a physician and patient may result from an express or implied contract, . . . and the rights and liabilities of the parties thereto are governed by the general law of contract . . ."). Because M.H.M. and Bolton had no patient-provider relationship, M.H.M. is due summary judgment on Plaintiff's remaining claims.

## CONLCUSION

Defendant M.H.M.'s Renewed Motion for Summary Judgment (Doc. 111) is **granted.**

**DONE** and **ORDERED** this 30th day of September, 2019.

/s/ JEFFREY U. BEAVERSTOCK
UNITED STATES DISTRICT JUDGE

---

[8] *See also,* Doc. 112-8 at 3, 4, ADOC Administrative Regulation: "Contract mental health staff provide the following inmate outpatient mental health services: Crisis intervention for inmates either identified with Mental Health Codes Zero through Six or **referred** by institutional staff, with documentation in the SOAP format on ADOC Form MH-040, *Progress Notes,* in the inmate's medical record." (emphasis added).